UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROY WIRTZ, ERIC BROWN, and PETER REIMERS, | ) ) ) ) |
| Plaintiffs | ) ) |
| v. | ) CAUSE NO. 3:11-CV-325 RLM-CAN ) |
| CITY OF SOUTH BEND, INDIANA, | ) ) |
| Defendant | ) |

OPINION AND ORDER

On September 7, the court enjoined the City of South Bend from transferring a specific parcel of land to Saint Joseph's High School. The City acquired the parcel for $1.2 million and planned to transfer it to the school for use in the athletic facilities to be constructed as part of the school's $35 million construction project. In exchange for the parcel, the City was to receive vaguely defined rights of use. The court held that the proposed transfer violated the Establishment Clause because a reasonable and well-informed observer would see the transaction as favoring one religious organization over other religious organizations and secular institutions. The City now returns with a motion to modify or dismiss the injunction to allow it to proceed with a transfer constructed differently. The City has obtained new appraisals of the parcel's market value and proposes to transfer the property to the best bidder, for a price not less than the average of those appraisals, pursuant to an Indiana statute. That statute allows

the City to reject the highest bid as long it gives an explanation; the notice to bidders indicates that in exercising that discretion, the City will consider each bidder's ability to promote the Saint Joseph's High School development and to use the parcel consistently with the school's surrounding athletic facilities.

For the reasons that follow, the court concludes that the City's proposed procedure, which requires a bidder to promote Saint Joseph's High School's development efforts, still would lead a reasonable, well-informed observer to view the transaction as favoring one religious organization over other religious organizations and secular institutions. Such a transaction would violate the Establishment Clause of the First Amendment to the United States Constitution, so the court denies the City's motion to modify or dismiss the injunction.

The court presumes the reader's familiarity with the September 7 order, and little from that order will be repeated in this opinion. The parties seem to agree that if relief is to be granted, it must be granted under Federal Rule of Civil Procedure 60(b)(5), so the court proceeds under that rule. Under Rule 60(b)(5), "[m]odification of a permanent injunction is extraordinary relief, and requires a showing of extraordinary circumstances." Money Store, Inc. v. Harriscorp Finance, Inc., 885 F.2d 369, 372 (7th Cir. 1989) (*quoting* United States v. City of Chicago, 663 F.2d 1354, 1360 (7th Cir. 1981)). The court must look to see if the original intent of the litigation has been accomplished and "whether there remains any need to continue the injunction." Id. (*quoting* United States v. Chicago, 663 F.2d at 1360).

Few facts have changed in the last six weeks, but the parties' stipulations have clarified some facts. When the City decided to purchase the parcel of land, it knew of two earlier appraisals, neither of which was performed at the City's request. In 2002, the parcel was appraised at $325,000 if unimproved and $610,000 "as completed." The record doesn't indicate what business, if any, was operating on the parcel at the time of that appraisal. In 2007, the parcel was appraised at $595,000. Those appraisals calculated the parcel's value using an income approach based only on the lease payment due when the lease began. When the City began negotiating for the parcel, the Family Dollar lease on the property had two years of its original term left, with 25 years of renewal options available. The City recalculated the parcel's value based on an income approach, contemplating higher annual lease payments under the renewal options, higher operating costs, and lower capitalization rate. With those assumptions, the City valued the parcel at $762,000 under the income approach.

The City couldn't buy the parcel for that $762,000 figure; two more ingredients were needed. First, the parcel's owner had no interest in selling, so an enticement – a price above the parcel's value – had to be offered. Second, the tenant needed inducement to forego the lease and abandon the parcel. When those additional inducements were added, the City paid $1.2 million – not just for the parcel, but also for the lease's value to the tenant and to induce an unwilling seller.

After the court enjoined the City from transferring the property to Saint Joseph's High School in exchange for access rights, the City shifted gears: instead, the City would proceed under Indiana Code § 36-1-11-4.2, which allows a city to sell its property to "promote an economic development project" or "to facilitate compatible land use planning." The City concedes that statutory compliance might not be required if Saint Joseph's High School is the successful bidder, since Saint Joseph's High School is a non-profit educational entity. IND. CODE § 36-1-11-1(b)(7). But the City intends to comply with the statute because it wants to open the bidding to all.

The statute requires the City to obtain two appraisals of the parcel and sell the parcel "for a value that is not less than the average of the two appraisals." IND. CODE § 36-1-11-4.2(d). The City has obtained the two appraisals. One was $370,000, and the other was $320,000, so the average – the minimum price at which the City can sell the property under the statute – is $345,000. The City proposes to take bids and sell the property. It appears from the notice to bidders that is an exhibit in this record that the bidding should have closed by now, but the record doesn't disclose the number or nature of any bids received.

The statute doesn't require a city to sell to the higher bidder, or even to sell to any bidder. IND. CODE § 36-1-11-4.2(d). The City's notice to bidders explains the factors the City will consider in deciding whether to accept a bid. Those include the bidder's ability, in comparison with other bidders, "to promote an economic development project consisting of the construction of Saint Joseph's High School

4

and related athletic facilities [and] to facilitate compatible land use planning in that the [parcel] should be used in a compatible manner with the surrounding parcels of land, all of which have been dedicated to use as athletic fields[.]"

The City contends that a sale of the parcel under this home rule statute won't violate the Establishment Clause.

The plaintiffs object to modifying the injunction to allow a sale under the City's new plan. The plaintiffs argue that the new plan, like the old, uses criteria that aren't neutral and, indeed, are simply a smokescreen for transferring the parcel to Saint Joseph's High School. The plaintiffs also argue that the City's new plan doesn't comply with the statute on which the City relies. Further, given the history of the City's acquisition of the parcel, the plaintiffs argue that even a sale to Saint Joseph's High School for the average of the two statutory appraisals would constitute a gift to the high school of the difference between the school's purchase price ($345,000) and the City's purchase price ($1,200,000). Finally, the plaintiffs argue that the City's new plan runs afoul of the Indiana Constitution.

The law by which these arguments are to be measured is the same as that discussed in the September 7 opinion. Establishment Clause issues are resolved under the three-prong test of <u>Lemon v. Kurtzman</u>, 403 US. 602 (1971), and the plaintiffs and the City dispute only the second prong, which has evolved into this: the challenged governmental action mustn't send a message "to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of

5

the political community." Lynch v. Donnelly, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring). "Every government practice must be judged in its unique circumstances to determine whether it constitutes an endorsement or disapproval of religion." Id. at 694.

The plaintiffs and the City each discuss Freedom from Religion Foundation, Inc. v. City of Marshfield, Wis., 203 F.3d 487 (7th Cir. 2000), and Mercier v. Fraternal Order of Eagles, 395 F.3d 693 (7th Cir. 2005). In those cases, cities owned land on which a religious statue or monument was located and transferred the land to a religious organization so as to avoid potential Establishment Clause suits without having to move the display. In Marshfield, the sale in question was completed to avoid a constitutional battle over the religious monument's placement on city property, and the court of appeals found that "[a]bsent unusual circumstances, a sale of real property is an effective way for a public body to end its inappropriate endorsement of religion." Freedom from Religion v. Marshfield, 203 F.3d at 491. The court didn't delve deeply into what "unusual circumstances" might entail since the parties in that case had stipulated that the sale process was proper, but the court implied several potential anomalies, including transactions that don't comply with state law governing the sale of land by a municipality. Freedom from Religion v. Marshfield, 203 F.3d at 492; *see also* Mercier v. Fraternal Order of Eagles, 395 F.3d at 702 (citing Marshfield and summing up the list of "unusual circumstances").

The City cites Marshfield as standing for the concept that it can rid itself of a past constitutional violation by conducting a statutorily-compliant sale of the real estate in question. That strips much of the reasoning from Marshfield, which addressed a case quite different from this one: Marshfield sold the land to rid itself of a potential Establishment Clause violation; the City of South Bend might violate the Establishment Clause by selling its land.

Mercier and Marshfield don't raise or lower the Establishment Clause bar. They tell us that selling property that contains a religious monument in a way that doesn't comply with state law might well rise to the level of "unusual circumstances," possibly tainting the transaction's neutrality. Mercier and Marshfield don't teach that strict compliance with the statute clears Establishment Clause violations. The Marshfield court noted that formalistic standards invite manipulation and the counter to that potential manipulation is a review of all the circumstances to decide whether the government action is endorsing religion. Freedom from Religion v. Marshfield, 203 F.3d at 491; *see also* Mercier v. Fraternal Order of Eagles, 395 F.3d at 700 (reflecting the Marshfield language and proceeding to look at all the circumstances of the transaction to ascertain whether the action endorsed religion).

The property's market value was another of the possible red flags the Marshfield court discussed. The court noted that "[b]ecause the Fund paid a fair market price for the land, we need not address whether the City has granted a religious organization a gift in the form of a sub-market rate sale price." 203 F.3d

7

at 492. On that, the City builds its argument that if Saint Joseph's High School pays the market value for the property, no benefit is transferred to the religious institution, so the Establishment Clause can't be violated. The court can't stretch Marshfield to such a bright-line rule. As the Marshfield court cautioned, courts must examine the "substance of the transaction as well as its form" to avoid the manipulation that a formalistic standard, such as selling at the appraised value, might invite. Freedom from Religion v. Marshfield, 203 F.3d at 491. No single fact is determinative.

This point resolves the plaintiffs' contention that the Establishment Clause forbids any transaction the City and Saint Joseph's High School might undertake unless the school pays what the City paid for the parcel – $1.2 million. That the City believed it had to pay considerably more than fair market value for the parcel – to entice the unwilling seller and to compensate for the tenant's ongoing business – is an important factor when evaluating how the objective, well-informed observer would view the transaction's neutrality. But it's not the only factor to consider. The best evidence before the court of the parcel's value today – stripped of the seller's unwillingness and the tenant's future income stream – is the appraisals the City procured within the last month. According to those appraisals, the parcel's current fair market value is somewhere around $350,000. Requiring a religious purchaser to pay more than triple what a secular purchaser could be expected to pay isn't a hallmark of the neutrality the Establishment Clause seeks. That the City paid much more than the parcel's fair market value

is a factor in the Establishment Clause analysis, but doesn't establish a minimum price Saint Joseph's High School must pay.

As was discussed in the September 7 ruling, governments have avoided endorsement in their dealings with religious entities by allocating benefits from the government "on the basis of neutral, secular criteria that neither favor nor disfavor religion, and is made available to both religious and secular beneficiaries on a nondiscriminatory basis." Agostini v. Felton, 521 U.S. 203, 230-231 (1997). The court understands the City's reconsideration argument to rest on these cases, effectively arguing that the state statute under which it proposes to proceed makes a benefit (purchase of government-owned property) available to all pursuant to neutral, secular criteria. The court doesn't understand the City to be arguing that a state statute trumps the First Amendment to the United States Constitution.

The plaintiffs originally argued that the statute provides no shelter to the City because it wouldn't govern a transfer to Saint Joseph's High School. The plaintiffs noted that Indiana Code § 36-1-11-4.2 doesn't apply to the sale of property to an Indiana nonprofit corporation organized for educational or religious purposes. IND. CODE § 36-1-11-1(b)(7). When the plaintiffs made that argument, they understood (as did the court) that the City was proposing to simply sell the parcel to Saint Joseph's High School for whatever the average of the two appraisals turned out to be. Since then, the City has clarified its intent to take bids from everyone – a universe that might include persons or entities not excluded by Indiana Code § 36-1-11-1(b)(7). The plaintiffs didn't renew this

9

argument in their subsequent supplemental memorandum, so the court assumes that the City's clarification of its plan mooted this objection.

The statute, though, doesn't identify any neutral criteria by which bids are to be judged. A municipality is free to reject any or all bids, limited only by the obligation to say why it did so. Such broad discretion is understandable in a statute designed to foster municipalities' promotion of economic development projects and facilitation of compatible land use planning. IND. CODE § 36-1-11-4.2(a). But a state statute that articulates no criteria for action, neutral or otherwise, holds little sway over the reasonable, well-informed observer's thoughts on the neutrality of a proposed sale of land that might go to a religious organization.

The City's notice to bidders specifies the criteria by which bids are to be received. Were those criteria neutral, the well-informed, reasonable observer might find no favor toward a single religious organization. But the City's criteria are anything but neutral. Those criteria include that the bidder, whether it be Saint Joseph's High School or anyone else, will "promote an economic development project consisting of the construction of Saint Joseph's High School and related athletic facilities [and] to facilitate compatible land use planning in that the [parcel] should be used in a compatible manner with the surrounding parcels of land, all of which have been dedicated to use as athletic fields[.]" Even if the criteria don't compel selection of Saint Joseph's High School's bid over any other bids, every bidder – the high school or any other person or entity – is evaluated on

10

the bidder's ability to promote Saint Joseph's High School's construction of athletic fields.

As stated earlier in this opinion and explained in significantly greater detail in the September 7 opinion, the question the court must ultimately decide under the second prong of the Lemon test is whether a reasonable, well-informed observer would see the transaction as an endorsement of religion. Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 779 (1995) (O'Connor, J., concurring); Books v. Elkhart Cnty., Ind., 401 F.3d 857, 867 (7th Cir. 2005). In answering that question, the court must look (as the reasonable and well-informed observer would look) at all the surrounding circumstances. Freedom from Religion v. Marshfield, 203 F.3d at 491; *see also* Mercier v. Fraternal Order of Eagles, 395 F.3d at 700.

That reasonable, well-informed observer would see a parcel of land the City of South Bend acquired, at a price well above the fair market value of the parcel itself, with the intention of conveying it to Saint Joseph's High School for use as part of the school's athletic facilities in exchange for vague and limited rights of access. That reasonable, well-informed observer would see the City now offering the parcel for sale to any bidder, for not less than the average of two appraisals of the parcel's fair market value, as simply a parcel of land rather than as an ongoing business – but that reasonable, well-informed observer also would see the City making that offer under a state statute that provides no criteria by which to select among bids received, and the City announcing that its own criteria include

11

the bidder's ability to promote Saint Joseph's High School's construction of athletic fields.

In other words, the reasonable, well-informed observer would see a City having acquired the parcel to transfer it to a particular Catholic school to promote that Catholic school's athletic fields, a City having tried to transfer the parcel to that Catholic school to promote that Catholic school's athletic fields, and a City now willing to sell the property to anyone who will promote that Catholic school's athletic fields, and a City proposing to do so for a price that could be less than a third of what the City paid for the parcel (though for approximately the now-empty parcel's fair market value). Nothing has been offered to change the court's conclusion in the September 7 opinion that, "The objective, well-informed, reasonable observer would see no delineation between supporting the high school's building project and supporting the religious school itself." Op. and Ord. (Sept. 7, 2011), at 36. A well-informed and reasonable nonadherent would see the proposed transfer as a direct endorsement of a particular religion over other religions and non-believers.

To the extent the City contends there are circumstances under which a municipality can transfer property to a religious institution without violating the Establishment Clause, the City is correct. *See, e.g.*, Committee for Public Educ. and Religious Liberty v. Nyquist, 413 U.S. 756, 771 (1973) ("It is equally well established, however, that not every law that confers an 'indirect,' 'remote,' or 'incidental' benefit upon religious institutions is, for that reason alone,

12

constitutionally invalid."); Roemer v. Board of Public Works of Maryland, 426 U.S. 736, 746-747 (1976) (noting that religious institutions regularly obtain all sorts of government benefits to assist with their secular activities, and those are often constitutional, even when they free up resources that can then be used for religious messages); Everson v. Board of Educ. of Ewing Twp., 330 U.S. 1 (1947) (finding that a program that provided school transportation to students of public and religious schools did not violate the Establishment Clause because it helped the families of children at religious schools neither more nor less than families of children at public schools). But given the recent history of the City's acquisition and attempt to convey the parcel here at issue, the City can't do so with its stated criteria for selecting among bidders without sending a message of endorsement of the Catholic faith.

For these reasons, the court DENIES the City of South Bend's motion to amend or dissolve injunction [doc. #24].

SO ORDERED.

ENTERED:  October 19, 2011 


      /s/ Robert L. Miller, Jr.
    Robert L. Miller, Jr., Judge
    United States District Court