UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROY WIRTZ, ERIC BROWN, PETER REIMERS, and TIM DELANEY, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | No. 3:11-CV-325-RLM-CAN |
| CITY OF SOUTH BEND, INDIANA, | ) ) ) | |
| Defendant | ) | |

OPINION and ORDER

This matter is before the court on plaintiffs' motion for attorneys fees and costs (Doc. No. 56). The defendant City of South Bend opposes certain rates and hours of the attorney's fees.

A party who prevails in an action brought pursuant to 42 U.S.C. § 1983 may recover reasonable attorney's fees. 42 U.S.C. § 1988. Fee shifting in these types of cases is the norm, and the prevailing plaintiff is typically entitled to the fees and costs unless the losing party can show that the award would be unjust. King v. Illinois State Bd. of Elections, 410 F.3d 404, 415–416 (7th Cir. 2005). The City doesn't dispute the plaintiffs' status as the prevailing party, or contend that an award of attorneys fees and costs would be unjust, or object to some of those costs. The City claims that certain attorney's fees are excessive or duplicative.

I. STANDARD FOR A FEE AWARD

I. STANDARD FOR A FEE AWARD

The ACLU of Indiana, ACLU National, and Americans United for Separation of Church and State attorneys didn't bill the four plaintiffs for the work they did on this case. That no attorney's fees were charged to a client doesn't preclude the award of attorney's fees to the organizations that did the legal work once the plaintiffs prevailed. Blum v. Stenson, 465 U.S. 886, 895 (1984) ("[R]easonable fees" under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."). Courts use a "lodestar" method of calculating the amount. Gisbrecht v. Barnhart, 535 U.S. 789, 801–802 (2002) (detailing the history of use of the lodestar method in federal courts and some other alternatives and noting that "the lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation."). The lodestar is calculated as the number of hours reasonably expended on a case multiplied by a reasonable hourly rate for each attorney. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); *accord* Graham v. Sauk Prairie Police Com'n, 915 F.2d 1085, 1109 (7th Cir. 1990). A properly calculated lodestar is presumed to be reasonable under § 1988. Graham, 915 F.2d at 1109. The City separately raises objections to both the reasonableness of certain rates and the reasonableness of certain hours expended.

II. R<small>EASONABLE</small> R<small>ATES</small>

The City objects to the hourly rates of attorney Kenneth J. Falk of the ACLU of Indiana and intern Erin Hammers, then working for Americans United.

The City does not object to the number of hours (5.2) that Mr. Falk expended, but the City contends that Mr. Falk's hourly rate of $400 is excessive because his work was limited to reviewing the work of lead counsel Gavin Rose. The City contends that a reasonable rate for reviewing Mr. Rose's work is $275 (the rate that Mr. Rose charges). The City hasn't attached any evidence that asserts the $275 rate is appropriate for Mr. Falk's level of experience.

To decide a reasonable rate, the court begins not with how Mr. Falk expended his hours, but rather by looking for the market rate for similarly-skilled attorneys. Picket v. Sheridan Health Care Center, 664 F.3d 632, 640 (7th Cir. 2011) ("[W]e have advised district courts to rely on the "next best evidence" of an attorney's market rate, namely 'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.'" *(quoting* Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999))); Blum v. Stenson, 465 U.S. at 895, n. 11 ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to-for convenience-as the prevailing market rate.").

The court must focus on the "hourly rates that attorneys of comparable skill, experience, and reputation charge for similar work." Pickett v. Sheridan Health Care, 664 F.3d at 641 (*citing* Blum v. Stenson, 465 U.S. at 894–895). Mr. Falk is Legal Director of the ACLU of Indiana and has been since the mid 1990s. Falk Aff. at 1. Mr. Falk graduated from Columbia Law School in 1977, worked for a legal aid society, then joined the ACLU. Id. The ACLU of Indiana has provided the court with affidavits of three Indiana attorneys, each of whom gives an opinion as to what the range of area billing rates are: $200 to $400 in one case, $200 to $550 in another case, and $200 to $525 in the third case. Wilson Aff. at 2–3; Sutherlin Aff. at 7–8; Waples Aff. at 2. Each affiant also attests to the rates of Messrs. Rose and Falk ($275 and $400, respectively) as being reasonable. The City has provided no refutation of any of these factual claims. Mr. Falk has immense experience in the exact subject matter at hand, the range of local area rates exceeds what he requests, and he should be near the high side of that range according to his credentials. Based on Mr. Falk's expertise and the rates that attorneys of comparable skill, experience, and reputation charge for similar work, $400 per hour is a reasonable rate. *See* Blum v. Stenson, 465 U.S. at 895.

The City also objects to the hourly rate ($90) of Americans United intern Erin Hammers. To bolster this claim, the City provided the court with evidence that many interns are unpaid and those who are paid tend to top out at $25 per hour. DeRose Aff. at 1. These figures, ranging from zero to $25 an hour, reflect the cost of having an intern on staff, not the prevailing billing rate for an intern. The

Supreme Court has said that § 1988's fee-shifting is specifically designed to compensate at the prevailing market rate, not cost. Blum v. Stenson, 465 U.S. 886, 895 (1984). "The policy arguments advanced in favor of a cost-based standard should be addressed to Congress rather than to this Court." Id. at 895–896.

The court must seek a reasonable rate for an intern to bill, not a reasonable rate to pay an intern. The plaintiffs have provided the court with a list of district court cases in which intern rates were between $90 and $125 per hour in fee shifting cases: Parish v. City of Elkhart, No. 3:07-CV-452, 2011 WL 1360810 at *4 (N.D. Ind., Apr. 11, 2011) (finding $105 per hour to be reasonable for an investigator/law student); Bartlett v. Batesky, No. 1:07-cv-452, 2007 WL 3171431, at *2 (awarding $90 per hour for secretarial or intern tasks); Branham v. Snow, No. 1:01-CV-152, 2006 WL 1750443, at *4 (S.D. Ind. June 19, 2006) (refusing to reduce the rates of a paralegal from $170 and a law clerk from $125 because the prevailing party had provided affidavits which created a presumption of these as market rates and the losing party had not provided sufficient evidence to justify a reduction); Eli Lilly & Co. v. Zenith Goldline Pharm., Inc., 264 F. Supp. 2d 753, 766 (S.D. Ind. 2003) (awarding attorneys' fees for law-clerk services at a rate of $100.00 per hour). The City has provided the court with no evidence indicating that $90 is not a reasonable market rate for the work of an intern. Erin Hammers' rate of $90 per hour is reasonable.

III. Hours Reasonably Expended

The City raises several objections that could be construed as objecting to the hours billed as not being reasonably expended.

The City objects to the hours expended by Daniel Mach of the ACLU National and Alex Luchenitser of Americans United, arguing that they are duplicative of each other and of the work done by lead counsel Gavin Rose. That multiple attorneys collaborated is not itself an indication of duplicative work. *See* Kurowski v. Krajewski, 848 F.2d 767, 776 (7th Cir. 1988) ("The use of two (or more) lawyers, which solvent clients commonly pay for because they believe extra help beneficial, may well reduce the total expenditures by taking advantage of the division of labor."); *see also* Gautreaux v. Chicago Housing Authority, 491 F.3d 649, 661 (7th Cir. 2007) ("[Using multiple attorneys] allows more experienced, accomplished, and expensive attorneys to handle more complicated matters and less experienced, accomplished, and expensive counsel to handle less complicated ones. Having one lawyer handle all of the work, as the CHA suggests, would not necessarily result in lower costs for the defendant.").

On the other hand, courts can't award fees that are duplicative. In Jardien v. Winston Network, Inc., 888 F.2d 1151, 1160 (7th Cir. 1989), the court of appeals remanded a case in which the district court had not adequately parsed the time records to determine if the second-chair attorney was necessary or duplicative. The court must inquire whether the work of Messrs. Luchenitser and Mach unique and contributing to the end product such that this represents a

collaborative effort, or is their work duplicative in that they just reviewed Mr. Rose's efforts?

In total, the plaintiffs seek reimbursement for 212 hours of attorney time and 34.2 hours of intern time. Of the 212 hours of attorney time, 87.3 are to Messrs. Luchenitser and Mach. If their role was just to review the product created by Mr. Rose, so many hours to review the work of lead counsel would appear excessive. But there is nothing wrong with dividing work that was truly collaborative, with Messrs. Mach and Luchenitser contributing significantly to the work product rather than just double-checking Mr. Rose's.

In analyzing a sampling of Mr. Luchenitser's 72.4 hours, it appears that he spent around 50 percent of his time editing and drafting documents, 3 percent of his time reviewing (without editing) the work of other people on the team, and the remaining 47 percent of his time reviewing information other than the work of the plaintiff's team (such as court orders or the City's responses) and communicating with the other attorneys on his team and the plaintiffs. Further, of the very small amount of time that Mr. Luchenitser spent reviewing the work of others without editing it, some of that was reviewing the work of intern Erin Hammers, who was his employee, rather than reviewing the work of lead counsel Gavin Rose.

Mr. Mach's distribution appears similar. In analyzing his hours, it appears that, of his 17.9 total hours, 63 percent of the hours involved him drafting or editing documents, and only 5 percent of the hours were spent reviewing the work of Mr. Rose without editing or drafting anything. The remaining hours are spent

reviewing other information (such as court orders and correspondence from the City), or conferring with other counsel.

A reading of the distribution of hours paints this picture: Messrs. Luchenitser and Mach were collaborators with Mr. Rose, not reviewers of his work. They edited and drafted for significantly more time than they simply reviewed. In contrast, Mr. Rose's supervisor, Mr. Falk, spent 5.2 hours reviewing Mr. Rose's work and no hours drafting or editing it (and the City found that an acceptable number of hours for a supervisor to spend in this purely reviewing mode). The time records indicate that the roles of Mr. Luchenitser and Mr. Mach involved contribution, so their time was not duplicative of the efforts of Mr. Rose's supervisor, Mr. Falk. The plaintiffs have submitted sufficient evidence to show that these three attorneys collaborated on the end result rather than only reviewing each other's work. The hours are allowable as reasonably expended and not duplicative.

### IV. OTHER OBJECTIONS

The City also objects to billing certain time spent by Mr. Luchenitser and other members of Americans United as legal time because it was administrative in nature, involved the solicitation and retention of clients, or involved media activity. A number of Mr. Luchenitser's entries appear to describe internal organization matters (e.g. "Organize case documents"). But this petition doesn't

bill that time to the City: while Mr. Luchenitser keeps track of the time as "raw time," each of these entries has a zero value under the "billed time" category.

Mr. Luchenitser also charged no billed time for many of his initial contacts and efforts to solicit named plaintiffs in this suit. In the plaintiffs' reply brief, filed after the City raised this objection, Mr. Luchenitser asked that nine time entries totaling 3.0 hours (which represent time spent in communication with the plaintiffs before they retained Americans United as counsel) be removed. On this request, the court has reduced Mr. Luchenitser's hours by 3.0. No further hours appear to relate to soliciting clients or communicating with them before retention.

Mr. Luchenitser's records include time entries for communicating with the media (for example, "E-mail reporter re impact of details of contract on our case" is a half-hour entry). These are not legal fees that can be charged to the City. Again, though, while Mr. Luchenitser shows these as raw time expended, he doesn't appear to include any public-relations efforts as "billed time." On the other hand, Mr. Luchenitser spent a few hours over the course of several months reviewing media coverage of the case. Unlike public relations efforts aimed at influencing the media's coverage, some small amount of time spent reviewing that coverage is chargeable as a legal fee. *See, e.g.* Drews v. Social Development Com'n, 95 F. Supp. 2d 985, 993 (E.D. Wis. 1998) ("While no attorney can base a significant portion of his fees on a review of newspaper articles, it is possible that background material can be learned from such a course, even if erroneous."). The

few billed hours Mr. Luchenitser expended as such are within the realm of reasonably expended time.

## V. THE SECOND MOTION TO DISMISS

In its response to the fee petition, the City mentions that it objects to time spent addressing the second motion to modify or dismiss the injunction. It does not identify the grounds on which it objects.

The second motion to modify the injunction was an entirely different beast than the filings that led up to it. The plaintiffs consented to the second motion, which acted, for all practical purposes, to dispose of the contentious issues in the case. The parties having come to terms, the court granted the motion. Having been presented with no legal or factual grounds on which to exclude the relatively small amount of time billed responding to the second motion to modify, this time is reasonably expended.

## VI. CONCLUSION

Because they are the prevailing party in an action brought under 42 U.S.C. § 1983 (a point which is not disputed), the plaintiffs in this case are entitled to an award of reasonable attorney's fees and costs. The court GRANTS that award of $70,695.06, in the following amounts:

1. $30,827.50 for the time spent by Gavin M. Rose of the ACLU of Indiana, to which the City does not object.

2. $2,080.00 for the time spent by Kenneth J. Falk of the ACLU of Indiana, based on the finding that Mr. Falk's rate was a reasonable rate and the fact that the City does not object to the hours he expended.

3. $24,290.00 for the time spent by Alex Luchenitser of Americans United, in spite of the City's objection to the time being duplicative of Mr. Rose's efforts (but reduced by 3 hours at Mr. Luchenitser's request).

4. $1,360.00 for the time spent by Ayesha Khan of Americans United, to which the City does not object.

5. $760.00 for the time spent by Natalie Shapero of Americans United, to which the City does not object.

6. $2988.00 for the time spent by intern Erin Hammers, then working for Americans United, in spite of the City's objection to interns being billed at $90 per hour.

7. $90.00 for the time spent by intern Thelma Scott, then working for the Americans United, to which the City does not object.

8. $7,160.00 for the time spent by Daniel Mach of the ACLU National, in spite of the City's objection to his time being duplicative of Messrs. Rose and Luchenitser's time.

9. $1,139.56 in costs, to which the City does not object.

SO ORDERED.

ENTERED: <u>February 17, 2012</u>

<u>     /s/ Robert L. Miller, Jr.     </u><br>
Judge<br>
United States District Court